IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| CLEMENTINE J. KEMPER | § | Case No. 00-11312 |
| | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| CLEMENTINE J. KEMPER | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 05-1036 |
| | § | |
| TEXAS GUARANTEED STUDENT | § | |
| LOAN CORPORATION | § | |
| | § | |
| Defendant | § | |

## MEMORANDUM OF DECISION[1]

This matter came before the Court for trial of the Complaint of the Debtor-Plaintiff, Clementine J. Kemper ("Debtor" or "Plaintiff"), through which she seeks a discharge of a student loan obligation to the Texas Guaranteed Student Loan Corporation under the "undue hardship" exception of 11 U.S.C. §523(a)(8). At the conclusion of the trial, the Court took the matter under advisement. This memorandum of decision disposes of all issues pending before the Court.[2]

---

[1]This Memorandum of Decision is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other evidentiary doctrines applicable to the specific parties in this proceeding.

[2] This Court has jurisdiction to consider the complaint pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(a). The Court has the authority to enter a final judgment in this adversary proceeding since

**Factual And Procedural Background**

The Debtor is a 53 year-old sixth grade reading teacher in the Kirbyville Consolidated Independent School District. She obtained a teaching certificate as a result of receiving a Bachelor of Science degree in Education and a Master of Education degree from Stephen F. Austin State University which she attended from August, 1990 to August, 1995. That education was made possible primarily through the Debtor's procurement of a series of student loans which were guaranteed by the Defendant, the Texas Guaranteed Student Loan Corporation ("TGSLC"). Over a span of five years, the Debtor borrowed over $47,000 for both academic and personal expenses.[3] At the time she obtained the loans, the Debtor was married to Ellis Kemper, Jr. who was retired from the Army.

Under the loan agreements, the Debtor was to begin making installment payments on the student loans around May, 1996. However, though she had gained employment as a teacher for the Shelbyville Independent School District, the Debtor asserts that her ability to begin the repayment of her student loans was immediately stymied by other financial difficulties leading to the filing of a joint bankruptcy petition for Chapter 13 relief with her husband in January, 1997. She and her husband confirmed a Chapter 13 plan in October, 1997, but the viability of the plan was soon threatened by ongoing

---

it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(I) and (O).

[3] *See* Ex. D-1 through D-15.

domestic problems. Even after a plan modification to lower their payments was approved, the Debtor and her ex-spouse could not maintain the payments and the Chapter 13 case was dismissed in May, 2000. During the pendency of the bankruptcy case, the Debtor made a single payment of $300 on her student loan in 1999. That is the only amount which the Debtor has ever paid toward her student loan obligation.

The Debtor re-filed for Chapter 13 relief, this time as a single debtor, in July 2000, primarily in an attempt to retain a 1997 Ford Escort automobile and a 1992 Plymouth Voyager van. A Chapter 13 plan was confirmed in her individual case on her first attempt. In September, 2005, the Debtor completed payments under that confirmed plan and she has received a Chapter 13 discharge. She has initiated this adversary proceeding in an attempt to demonstrate that excepting her student loans from discharge, the balance of which totaled $59,751.92 as of February 2, 2006, and thereby requiring the remittance of $465.00 per month to the TGSLC, would impose an undue hardship upon her.

The Debtor remains employed as a teacher with the Kirbyville CISD, with approximately 12 more useful years of employment anticipated, with any anticipated retirement benefits derived solely from the Texas Teacher Retirement System. She is still divorced and has three children. Her 10 year-old daughter lives with her. Her 18 year-old daughter, who recently had a baby out-of-wedlock, still lives in the Debtor's household with her child. Her 18 year-old son will begin college in the fall, though the Debtor offered no evidence that she was assuming any of the expenses attendant thereto.

The current monthly take-home pay for the Debtor is $3,093.00.[4] The following is a listing of her asserted monthly expenses:

| | | | |
|---|---|---|---|
| Rent | $ 500.00 | Medical Expense: | $ 175.00 |
| Electricity | $ 323.00 | Transportation | $ 400.00 |
| Phone (inc cell) | $ 325.00 | Recreation | $ 100.00 |
| Water & Sewer | $ 30.00 | Auto Insurance | $ 256.00 |
| Satellite TV | $ 60.00 | Auto Payment (lease) | $ 557.00 |
| Trash | $ 40.00 | Credit Cards | $ 45.00 |
| Food | $ 500.00 | Personal Care & Grooming | $ 75.00 |
| Clothing | $ -0- | Child Care | $ 100.00 |
| Laundry/Dry Clean | $ 40.00 | **TOTAL** | $3,526.00 |

The Debtor testified that the budgetary numbers do not reflect certain outstanding medical bills in the approximate amount of $1700 and an anticipated rise in her medical expenses in the coming years, although she acknowledged that certain of the credit card allotment could go for medical bills. She further testified that the high transportation costs arise from her visits to an elderly mother in Louisiana virtually every weekend and that the "child care" expense relates to financial assistance which she is providing for the benefit of her new grandchild. Her daughter is unemployed and currently receives no child support. The Debtor knows of no higher paying job in her field for which she is currently qualified, although she admitted upon cross-examination that she has not sought a second job nor has she sought employment during the school's summer recess.

It is under these financial circumstances that the Debtor brings the present

---

[4] This figure includes the Debtor's receipt of child support of $100/mo. and SSI payments of $331/mo. related to the support of her 10 year-old daughter. It also reflects the Court's rejection as implausible the Debtor's projected receipt of $180/mo for cell phone usage from her 18 year-old son who is headed for college with no definitive employment prospects.

complaint seeking to discharge her student loan indebtedness to the TGSLC under the "undue hardship" provisions of 11 U.S.C. §523(a)(8).

## Discussion

### *Undue Hardship Test*

§523(a)(8) of the Bankruptcy Code excepts from an individual's discharge "a loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit ... unless excepting such debt from discharge ... will impose an undue hardship on the debtor and the debtor's dependents." This exception to discharge "was enacted to prevent indebted college or graduate students from filing for bankruptcy immediately upon graduation, thereby absolving themselves of the obligation to repay their student loans." *Tenn. Student Assistance Corp. v. Hornsby (In re Hornsby)*, 144 F.3d 433, 436-37 (6th Cir. 1998). It also protects the continued financial viability of educational loan programs. As the Second Circuit recently observed,

> ...because student loans are generally unsecured and recent graduates often have few or no assets, these debtors have an incentive to try to discharge their educational loans in bankruptcy. If successful, they can then enjoy the higher earning power the loans have made possible without the financial burden that repayment entails. Congress enacted §523(a)(8) because there was evidence of an increasing abuse of the bankruptcy process that threatened the viability of educational loan programs and harm to future students as well as taxpayers. Congress recognized that this is an instance

where a creditor's interest in receiving full payment of the debt outweighs the debtor's interest in a fresh start.

*Cazenovia College v. Renshaw (In re Renshaw)*, 222 F.3d 82, 86-87 (2d Cir. 2000)(citations omitted).

However, as the statutory text suggests, a discharge of a student loan is possible if a debtor can demonstrate, by a preponderance of the evidence, that to hold the student loan non-dischargeable would impose an "undue hardship" upon her and her dependents. Surprisingly, there is no precise definition of the term "undue hardship." It is not defined in the Bankruptcy Code nor has any particular judicial definition been endorsed by any decision of the United States Supreme Court. *Kettler v. Great Lakes Higher Educ. Serv. Corp. (In re Kettler)*, 256 B.R. 719, 722 (Bankr. S.D. Tex. 2000). However, as courts have attempted to balance a debtor's need for a fresh start with the recognized need to protect student loan programs and their participants, a growing consensus has emerged regarding the evidentiary foundation necessary to establish an undue hardship. Most courts have endorsed a three-prong test articulated by the Second Circuit Court of Appeals in *Brunner v. New York State Higher Educ. Serv. Corp.*, 831 F.2d 395 (2d Cir. 1987) under which a debtor is required to show:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loan;
(2) that additional circumstances exist indicating that this state of affairs is

>   likely to persist for a significant portion of the repayment period of the student loan; and
>
> (3) that the debtor has made good faith efforts to repay the loan.

*Id.* at 396. This test, which had been previously adopted by the Third,[5] Sixth,[6] Seventh,[7] and Ninth[8] Circuits, has now been expressly adopted by the Fifth Circuit. *U.S. Dept. of Educ. v. Gerhardt (In re Gerhardt)*, 348 F.3d 89 (5th Cir. 2003).[9] Accordingly, this Court will review the Debtor's evidentiary presentation in light of the *Brunner* factors in order to determine whether she has met her burden to demonstrate the existence of an undue hardship.

Under the first *Brunner* element, the Debtor is required to show that she cannot

---

[5] *Pennsylvania Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 306 (3d Cir. 1995), *cert. denied*, 518 U.S. 109, 116 S.Ct. 2532, 135 L.Ed.2d 1055 (1996).

[6] *Cheesman v. Tennessee Student Assistance Corp. (In re Cheesman)*, 25 F.3d 356, 359 (6th Cir. 1994), *cert. denied*, 513 U.S. 1081, 115 S.Ct. 731, 130 L.Ed.2d 634 (1995). Actually, while the Sixth Circuit in *Cheesman* did not expressly adopt *Brunner* in its finding that the student loans in question "were dischargeable under any undue hardship test the [bankruptcy] court may have used," it undoubtedly applied the *Brunner* factors in affirming the bankruptcy court's decision.

[7] *In re Roberson*, 999 F.2d 1132, 1135 (7th Cir. 1993).

[8] *United Student Aid Funds, Inc. v. Pena (In re Pena)*, 155 F.3d 1108, 1111-12 (9th Cir. 1998). In reviewing the various circuit decisions and rejecting the reading of the bankruptcy appellate panel below, the Ninth Circuit in *Pena* also observed that, notwithstanding the slightly different language, "[i]t does not appear that the Sixth Circuit in *Cheesman* was a proclaiming a test distinct from *Brunner*."

[9] Since *Gerhardt*, the Fourth Circuit has also adopted *Brunner*, *Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour)*, 433 F.3d 393 (4th Cir. 2005) and, while the Eighth Circuit still purports to apply its own independent "totality of the circumstances" test, such test requires an examination of the same factors articulated by *Brunner*, including the debtor's current and future financial resources, the reasonableness of the debtor's living expenditures, and any other relevant facts or circumstances. *See Andrews v. South Dakota Student Loan Assistance Corp. (In re Andrews)*, 661 F.2d 702 (8th Cir. 1981); *Cline v. Illinois Student Loan Assistance Assoc.(In re Cline),* 248 B.R. 347, 349 (8th Cir. B.A.P. 2000).

maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if she is forced to repay the student loan. This analysis is actually a two-step process encompassing: (1) the evaluation of the debtor's present standard of living based upon her lifestyle attributes which appear from the record and (2) whether the forced repayment of the student loan obligation will preclude the debtor from maintaining a minimal standard of living. *Naranjo v. Educ. Credit Mgmt. Corp. (In re Naranjo)*, 261 B.R. 248, 254-55 (Bankr. E.D. Cal. 2001). The test requires "more than a showing of tight finances, and is not met 'merely because repayment of the borrowed funds would require some major personal and financial sacrifices.'" *Elmore v. Mass. Higher Educ. Assistance Corp. (In re Elmore)*, 230 B.R. 22, 26 (Bankr. D. Conn. 1999), citing *Penn. Higher Educ. Assistance Agency v. Faish (In re Faish)*, 72 F.3d 298, 306 (3d Cir. 1995), *cert. denied*, 518 U.S. 109, 116 S.Ct. 2532, 135 L.Ed.2d 1055 (1996). However, the test does not require a debtor to demonstrate that repayment of the loan would cause her and her family to live at or below poverty level. *Lebovitz v. Chase Manhattan Bank (In re Lebovitz)*, 223 B.R. 265, 271 (Bankr. E.D.N.Y. 1998).

The Debtor has fulfilled the first *Brunner* prong by a preponderance of the evidence. The Debtor asserts that she meets that prong even prior to the application of the required student loan payment.[10] While the Court may not agree that the Debtor's budget reflects a minimal standard of living due to the fact that her budget projections

---

[10] *See* Ex. P-14.

reflect a degree of discretionary spending in certain categories,[11] there are other legitimate expense categories, such as clothing and medical expenses, which would absorb much of those "recovered" amounts. While any reasonable adjustment made to those expense categories *sans* the student loan payment could conceivably help the Debtor to break-even or create a slight budget surplus, that surplus would be dramatically eradicated by the forced repayment of the $465 monthly student loan obligation. Since the Debtor's monthly expenses would substantially exceed her monthly income if forced to repay the student loan, she has successfully shown that she cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if she is forced to repay the student loan. *Gerhardt*, 348 F.3d at 92.

The second *Brunner* factor requires the Debtor to demonstrate that additional circumstances exist which indicate that her inability to maintain a "minimal" standard of living, as established under the first prong, is likely to persist for a significant portion of the repayment period of the student loan. This second prong considers the likelihood that the debtor's financial situation will improve sufficiently in the future to permit her to resume the payment of her educational loans, *United States Dept. of Educ. v. Wallace (In re Wallace)*, 259 B.R. 170, 181 (C.D. Cal. 2000) and is "intended to effect the clear congressional intent exhibited in section 523(a)(8) to make the discharge of student loans more difficult than that of other nonexcepted debt." *United Student Aid Funds, Inc. v.*

---

[11] The Court believes that the projections for electricity, phone, transportation and "child care" could be reduced by an aggregate amount of approximately $300.

*Nascimento (In re Nascimento)*, 241 B.R. 440, 445 (9th Cir. B.A.P. 1999). This factor "more reliably guarantees that the hardship presented is 'undue.'" *Elmore,* 230 B.R. at 27, citing *Brunner*, 831 F.2d at 396. Essentially it forces a debtor to establish the existence of circumstances which now negatively impact her future earning potential but "which were either not present when the debtor applied for the loans or have since been exacerbated." *Gerhardt*, 348 F.3d at 92.

It is uncontested that the Debtor is likely to remain employed only for another 12 years prior to reaching retirement which shall be funded solely through TRS distributions. For the substantial portion of such a period, the evidence establishes that the Debtor's inability to maintain a minimal standard of living will continue if she is forced to tender the required student loan payment each month. This was not the scenario anticipated when the Debtor procured the loans. She was anticipating that the income from her teaching would be used to supplement the income to be contributed to the household by her husband. Yet the post-graduation divorce changed those circumstances and the Debtor's ability to service the $465 monthly indebtedness appears permanently damaged. Her capacity to increase her net income over the next 12 years seems limited. She has never been offered a higher-paying position and there is no evidence that she can qualify for a supervisory position at her school without meeting additional educational requirements. While it is true that certain expenditures will decrease as each child becomes economically independent, it is also likely that the youngest daughter will

remain dependent upon the Debtor throughout most of the projected payment period, and any degree of independence will actually lower the Debtor's income through the termination of the child support and SSI supplemental income currently received by the Debtor for the benefit of her youngest child. There is also uncontradicted evidence that the Debtor's monthly medical expenses, which are currently addressed through seven different prescribed medicines, are likely to increase in the future. Thus, by a preponderance of the evidence, the Debtor has satisfactorily met the second prong of the *Brunner* test.

Finally, the third inquiry under *Brunner* is whether the debtor has made a good faith effort to repay her student loan. This aspect recognizes that undue hardship "encompasses a notion that the debtor may not wilfully or negligently cause his own default, but rather his condition must result from 'factors beyond his reasonable control.'" *Stein v. Bank of New England (In re Stein)*, 218 B.R. 281, 288 (Bankr. D.Conn.1998), citing *In re Roberson*, 999 F.2d 1132, 1136 (7th Cir.1993). "Moreover, upon receiving the taxpayer-guaranteed loan and consequent educational benefit, a debtor assumes an obligation to make a good faith attempt at full repayment as 'measured by his or her efforts to obtain employment, maximize income and minimize expenses,' *Id*., and to undertake all other reasonable efforts to insure repayment." *Elmore,* 230 B.R. at 27, citing *Brunner*, 831 F.2d at 397. "Factors to be considered include the number of payments the debtor made, attempts to negotiate with the lender, proportion of loans to total debt, and

-11-

possible abuse of the bankruptcy system." *Wallace*, 259 B.R. at 185.

It is undisputed that the Debtor has made only one payment on her student loan indebtedness. Yet, the Debtor cannot be fairly described as a deadbeat during that period, nor can one conclude that she has not taken her student loan obligations seriously. She immediately gained employment in the public education field upon graduation and has remained so employed to the present time. Unfortunately schoolteachers are not compensated in a manner commensurate with their contributions to society and thus the Debtor's monthly income is not substantial. Further, there is no evidence before the Court that the Debtor qualified for any reduction or consolidation programs which would have brought the student loan obligation within the Debtor's ability to pay. Finally and most importantly, during the vast majority of the time period since the loans became due, the Debtor has been involved in a Chapter 13 case. Because of the statutory obligation under Chapter 13 for a debtor to dedicate all of her disposable income to payments under a plan, the student loan obligation in this instance has essentially been subjected to a legal deferment or forbearance for virtually all of the payment period because the §362(a) stay has prohibited any collection attempt by the TGSLC, and any attempt by the Debtor to usurp the priority scheme by diverting her disposable income toward the payment of this nondischargeable student loan obligation would have been quickly quashed. Her finances have been subject to constant scrutiny by her trustee and by her creditors during most of this period. Indeed, the interests of her creditors as a whole have been served during this

period as she fulfilled her obligations to creditors in accordance with the priorities and procedures set forth in Chapter 13, thereby successfully completing a five-year Chapter 13 plan. While any effort to address her obligations to the TGSLC may have been indirectly thwarted thereby, such a result was effectively mandated by the Debtor's fulfillment of her obligations as a Chapter 13 debtor during the vast majority of the repayment period. Accordingly, under a totality of the circumstances existing in this case, the Court finds that the third element of the *Brunner* test has been satisfied by the Debtor.

Obviously the critical element in the Court's evaluation of the Debtor's circumstances in this case has been the cumulative loan balance approaching $60,000, thereby dictating a $465 monthly payment for which the Debtor would continue to be liable if her student loan indebtedness remains wholly nondischargeable. If the amount were smaller and if the repayment period could be redefined in the context of the Debtor's remaining years of employment, the finding of an undue hardship under the Debtor's present financial circumstances would become increasingly problematic. The Debtor's take-home pay is not an insignificant amount. She enjoys stable employment in an established public school system and nothing suggests any likely disruption to that relationship. Indeed, she and her family would not enjoy the income which she now receives were it not for the education she received as a direct result of the availability of the student loans. Thus, if the repayment of the obligation could be restructured in terms of amount and duration, then such repayments could likely be tendered by the Debtor and

the policy objectives undergirding the general nondischargeability of student loans could be sustained, at least in part, without the imposition of an undue hardship upon the Debtor.

This Court has previously endorsed the use of its §105(a) powers to impose a restructuring of the debtor-creditor relationship in a proper context so as to require a debtor to fulfill at least a partial repayment of a student loan obligation, when an "all or nothing" evaluation would have mandated the discharge of the entire debt. *See Barron v. Tex. Guaranteed Student Loan Corp. (In re Barron)*, 264 B.R. 833, 843-46 (Bankr. E.D. Tex. 2001) and cases cited therein. In light of that jurisprudence and the reasoning expressed therein, the circumstances of this case justify this Court's use of §105(a) to grant to the Debtor only a partial discharge of her student loan obligation to the Defendant. It is clear, as explained previously, that the Debtor cannot maintain a minimal standard of living while fulfilling her $465 monthly obligation to the TGSLC. However, if the obligation is restructured to provide a reasonable monthly payment over the remainder of her projected working career, and if combined with some restructuring of her financial lifestyle, the Debtor is capable of satisfying at least a portion of the debt without undue hardship. Her monthly income is not likely to decrease and is subject to small incremental increases. Under proper motivation, the Debtor has demonstrated an ability to tender $295 per month to the Chapter 13 Trustee to fulfill her plan obligations when the financial demands upon her were greater than they are presently or will be in the

future. Equally important is the fact that this solution rightfully protects those policy principles under which student loans are generally declared to be non-dischargeable under §523(a)(8), while also protecting the Debtor from the imposition of an undue hardship and the loss of her "fresh start" which would undoubtedly occur if she obtained no relief at all from the student loan obligations.

Accordingly, because the Plaintiff has established by a preponderance of the evidence that she could not maintain a minimal standard of living if forced to repay this student loan without any alteration of the obligations owing to the TGSLC, but that she could, in fact, address a significant portion of the obligation if a repayment schedule were to be reinstituted, the Court concludes that the relief sought by the Plaintiff's complaint will be granted in part and denied in part and that the student loan obligation due and owing by the Plaintiff, Clementine J. Kemper, to the Defendant, the Texas Guaranteed Student Loan Corporation, is hereby declared to be dischargeable pursuant to the provisions of 11 U.S.C. §523(a)(8) as imposing an undue hardship upon the Debtor and her dependents, save and except for the sum of $27,000.00 which is expressly declared to be non-dischargeable. As to the non-dischargeable amount, the Court shall, pursuant to its equitable powers codified in 11 U.S.C. §105(a), restructure the debtor-creditor relationship between the Plaintiff and the Defendant by imposing a repayment schedule upon the parties which provides that the Plaintiff shall pay the non-dischargeable principal amount of $27,000.00 over a term of one hundred forty-four (144) months at

$292.26 per month, which reflects an annual interest rate of 8%.[12] Such payments shall commence by the Plaintiff on October 10, 2006 and continue for each month thereafter until satisfied in full. Any subsequent payment default by the Plaintiff under this prescribed schedule shall entitle to the Defendant to exercise any remedy which it may possess under applicable law. This memorandum of decision constitutes the Court's findings of fact and conclusions of law[13] pursuant to Fed. R. Civ. P. 52, as incorporated into adversary proceedings in bankruptcy cases by Fed. R. Bankr. P. 7052. An appropriate judgment will be entered which is consistent with this opinion.

Signed on 08/07/2006

*Bill Parker*

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[12] Only limited portions of the promissory notes were made available to the Court by the Defendant and thus the Court is unable to compare this rate with those provided in the notes.

[13] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.